**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| BROOKE MOORE, | § | |
| | § | |
| Plaintiff, | § | CASE NUMBER |
| | § | |
| v. | § | |
| | § | |
| EMORY HEALTHCARE, INC. | § | |
| | § | |
| Defendant. | § | |
| | § | |
| _____ | / | |

**COMPLAINT FOR GENDER DISCRIMINATION, SEXUAL**
**HARASSMENT, RETALIATION. AND BREACH OF CONTRACT**

**COMES NOW** Brooke Moore, Plaintiff in the above-styled action, and files

this Complaint.

**PARTIES, JURISDICTION AND VENUE**

**1.**

Plaintiff Brooke Moore is an individual resident of Fayette County, Georgia.

**2.**

Defendant Emory Healthcare, Inc. ("EHC") is a Georgia corporation that may

be served with process through its Registered Agent, Amy Adelman, Esq., 201

Dowman Drive, 312 Administration Building, Atlanta, GA 30322**.**

1

**3.**

This Complaint includes actions for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 USC §2000e *et seq*. ("Title VII"), to recover for discrimination on the basis of sex, hostile work environment harassment on the basis of sex, and retaliation.  This Court has original jurisdiction over these claims under 28 USC §1331.

**4.**

Plaintiff asserted claims of discrimination against EHC on the basis of sex, hostile work environment on the basis of sex, and retaliation under Title VII in a filing with the Equal Employment Opportunity Commission ("EEOC") within 180 days of EHC's last discriminatory act.

**5.**

The EEOC issued a Notice of Right to Sue less than ninety days prior to the filing of Plaintiff's Complaint.  A true and correct copy of the EEOC's letter is attached hereto as Exhibit 1.

**6.**

This Court has supplemental jurisdiction over Plaintiff's state law claims.

## PLAINTIFF BROOKE MOORE'S BACKGROUND

### 7.

Plaintiff Brooke Moore is a former employee of EHC.  She was continuously employed by EHC for over thirty years, until July 2, 2022.  During her tenure with EHC, she held multiple positions in the Finance Division.  Her final position, which she had held since 2006, was EHC VP of Finance and Chief Financial Officer (CFO) of the Physician Group Practices Division of EHC.

### 8.

For most of her career with EHC, Plaintiff Moore reported directly or indirectly to EHC CFO Jimmy Hatcher.

### 9.

In or about 2007, Jimmy Hatcher claimed that his spouse (who is not employed by EHC) had accused Plaintiff Moore of having a sexual affair with Mr. Hatcher.  That accusation was untrue.  In response to this false accusation, and despite Plaintiff having done nothing improper, Mr. Hatcher punished Plaintiff by imposing restrictions on Plaintiff's professional interactions with him.

**10.**

Mr. Hatcher's restrictions against Plaintiff, which continued from 2007 until Mr. Hatcher voluntarily retired from EHC in January 2022, included barring Plaintiff from communicating with him via his cell phone about work matters.  While Plaintiff was barred from communicating with Mr. Hatcher via his cell phone regarding work matters, Plaintiff's peers and subordinates were allowed to communicate with Mr. Hatcher via his cell phone regarding work matters.  Mr. Hatcher's restriction against Plaintiff communicating with him via his cell phone regarding work matters undermined Plaintiff in the eyes of her colleagues, superiors, and subordinates.

**11.**

While Plaintiff was barred from communicating with Mr. Hatcher via his cell phone regarding work matters, Mr. Hatcher was sometimes unreachable by other means.  Plaintiff's inability to reach Mr. Hatcher via his cell phone regarding work matters sometimes interfered with Plaintiff's performance of her normal duties.

**12.**

Commencing in or about 2007, escalating in 2020, and continuing until Mr. Hatcher voluntarily retired from EHC in January 2022, Mr. Hatcher routinely ignored, belittled, and criticized Plaintiff's contributions during meetings he

attended with her and her colleagues, superiors, and subordinates.  Mr. Hatcher's discrimination against and harassment of Plaintiff became so severe that, in order to have Mr. Hatcher consider Plaintiff's suggestions and recommendations during meetings, Plaintiff was forced to ask colleagues, subordinates, and superiors to convey her suggestions and recommendations to Mr. Hatcher on her behalf.  These actions by Mr. Hatcher undermined Plaintiff in the eyes of her colleagues, subordinates, and superiors.

**13.**

Commencing in or about 2007, escalating in 2020, and continuing until Mr. Hatcher voluntarily retired from EHC in January 2022, Mr. Hatcher routinely refrained from communicating his instructions directly to Plaintiff and instead instructed Plaintiff's subordinates and superiors to convey instructions from him to her.  These actions by Mr. Hatcher undermined Plaintiff in the eyes of her subordinates, colleagues, and superiors.

**14.**

Commencing in or about 2007, escalating in 2020, and continuing until Mr. Hatcher voluntarily retired from EHC in January 2022, Mr. Hatcher routinely disregarded the chain of command by providing instructions and delegating

assignments directly to Plaintiff's subordinates without including Plaintiff in his communications.  These actions by Mr. Hatcher undermined Plaintiff in the eyes of her colleagues, subordinates, and superiors.

**15.**

The actions and restrictions by Mr. Hatcher that are described in Paragraphs 9, 10, 11, 12, 13, and 14 only applied to Plaintiff.

**16.**

EHC's Physician Group Practice Patient Financial Services department has approximately 500 employees.  During part of Plaintiff's tenure with EHC, her core responsibilities included oversight of this department and supervision of direct reports within this department.

**17.**

In or about 2017 or 2018, Mr. Hatcher removed EHC's Physician Group Practice Patient Financial Services department from Plaintiff's core responsibilities, thereby reducing the number of Plaintiff's direct and indirect reports.

**18.**

Mr. Hatcher took the action described in Paragraph 17 without having a performance basis to do so.

**19.**

Mr. Hatcher took the action described in Paragraph 17 without replacing Plaintiff's oversight of EHC's Physician Group Practice Patient Financial Services department with other core responsibilities.

**20.**

Mr. Hatcher took the action described in Paragraph 17 without notifying Plaintiff that he had taken this action.  Plaintiff only learned of this action approximately two years after it occurred, during her participation in an investigation of allegations of race discrimination within EHC's Physician Group Practice Patient Financial Services department.

**21.**

By reducing Plaintiff's total portfolio in the manner described in Paragraph 17, Mr. Hatcher effectively demoted Plaintiff without having a performance basis to do so.

**22.**

Because Mr. Hatcher and EHC failed to notify Plaintiff of the reduction in her portfolio described in Paragraph 17, Plaintiff had no opportunity to respond to or challenge the change and no awareness that one of the people whom she regarded

and treated as a direct report had no reporting responsibilities to her.  Because one of the people whom Plaintiff regarded and treated as a direct report had no actual reporting responsibilities to her, Plaintiff's EHC colleagues perceived that she was interfering with that person's employment when Plaintiff attempted to exercise supervisory responsibility over that person. Plaintiff's professional standing among her EHC colleagues, subordinates, and supervisors was negatively impacted as a result.

## 23.

Mr. Hatcher participated in Plaintiff's performance reviews, giving her negative reviews and attempting to prevent her from receiving salary increases and bonuses notwithstanding Plaintiff's performance that consistently met or exceeded targets.

## 24.

As a result of Mr. Hatcher's actions and restrictions directed towards Plaintiff, Plaintiff's compensation by EHC was negatively impacted.

## 25.

As a result of Mr. Hatcher's actions and restrictions directed towards Plaintiff, Plaintiff's efforts to perform her professional duties were negatively impacted.

**26.**

As a result of Mr. Hatcher's actions and restrictions directed towards Plaintiff, Plaintiff's subordinates, colleagues and superiors witnessed that she received differential, less respectful treatment by Mr. Hatcher.   Plaintiff's professional standing among her EHC colleagues, subordinates, and supervisors was negatively impacted as a result.

**27.**

Plaintiff confronted Mr. Hatcher regarding his treatment of her and also complained to EHC's Human Resources Department, to the separate Physician Group Practices Human Resources Department, and to multiple Chief Operating Officers of the Physician Group Practices Division of EHC.

**28.**

EHC failed to take sufficient corrective action in response to Plaintiff's multiple complaints, failing to rein in Mr. Hatcher's discriminatory conduct.

**29.**

EHC's failure to take sufficient corrective action included a failure to relieve Plaintiff from reporting directly to Mr. Hatcher and a failure to bar Mr. Hatcher from

having any role in Plaintiff's performance reviews despite Plaintiff's request that EHC take those actions.

**30.**

In 2020, following Plaintiff's efforts to address Mr. Hatcher's discriminatory and harassing treatment of her, Mr. Hatcher complained to EHC about Plaintiff. Mr. Hatcher alleged that Plaintiff had behaved inappropriately in meetings, prompting an investigation of Plaintiff by EHC while EHC continued to fail to sufficiently respond to Plaintiff's multiple complaints about Mr. Hatcher.

**31.**

EHC's investigation of Plaintiff in response to Mr. Hatcher's allegations did not establish any wrongdoing by Plaintiff.

**32.**

During EHC's 2020 investigation of Mr. Hatcher's behavior towards Plaintiff, Mr. Hatcher admitted that he treated Plaintiff differently than other EHC employees, including with respect to his refusal to permit Plaintiff to communicate with him by cell phone regarding work matters. In 2020, Mr. Hatcher attempted to justify his differential treatment of Plaintiff with respect to the cell phone by referring to an alleged 2007 incident with his spouse.

**33.**

Mr. Hatcher was not sufficiently disciplined in response to EHC's 2020 investigation.  Thereafter, Mr. Hatcher continued to be one of Plaintiff's two direct supervisors.

**34.**

Following Plaintiff's reports to EHC regarding Mr. Hatcher's discriminatory and harassing treatment of her, EHC removed some of the responsibilities Plaintiff had held without replacing those removed responsibilities with new responsibilities. This resulted in a reduction in Plaintiff's professional standing among her subordinates, colleagues, and supervisors, despite the absence of a performance basis for such actions by EHC.

**35.**

After Plaintiff reported Mr. Hatcher to EHC, Mr. Hatcher continued to exclude her from conversations and decision making that were normal parts of her job responsibilities, thereby interfering with her ability to perform her job.  This conduct by Mr. Hatcher continued despite EHC instructing him to correct his behavior towards Plaintiff.

**36.**

In 2020, EHC acknowledged that Mr. Hatcher had committed a non-specific violation of the Emory Pledge towards Plaintiff. EHC failed to take sufficient corrective action in response to this finding.  Thereafter, Mr. Hatcher continued to criticize Plaintiff without ever acknowledging or apologizing for his discriminatory treatment of her or for his violation of the Emory Pledge.

**37.**

Plaintiff reported to EHC Mr. Hatcher's continuing failure to correct his behavior.  Thereafter, EHC continued to fail to adequately discipline Mr. Hatcher to compel him to remedy his mistreatment of Plaintiff.

**38.**

In or about February 2021, EHC senior leadership again acknowledged that Mr. Hatcher treated Plaintiff differently than he treated other EHC leaders.  Despite this acknowledgment, EHC again failed to take corrective action and instead assured Plaintiff that she would receive "the place at the table that she deserved" once Mr. Hatcher voluntarily retired.

**39.**

After Plaintiff complained to EHC about Mr. Hatcher's treatment of her, and after Mr. Hatcher's replacement had been hired (but before the replacement commenced employment at EHC), Mr. Hatcher participated in a reorganization of EHC's finance team that included creation of a new position, EHC Hospital Group CFO (the "New Position").  After Mr. Hatcher's replacement had been hired (but before the replacement commenced employment at EHC), and on Mr. Hatcher's recommendation, EHC promoted another EHC employee into the New Position without first posting the New Position within EHC, and without creating a job description for the New Position.   EHC began to create the job description for the New Position and began to update its organizational chart to reflect the New Position, with Mr. Hatcher's participation, no sooner than one month after the New Position was filled.

**40.**

Plaintiff is fully qualified for the New Position.  Plaintiff's qualifications for the New Position are equal to or superior to those of the person who was promoted into the New Position.  In particular, Ms. Moore had been employed by EHC longer

and had broader experience within EHC than the person who was awarded the New Position.

**41.**

EHC's promotion of the less-experienced employee into the New Position disregarded EHC's assurances to Plaintiff that she would receive a "place at the table."

**42.**

EHC's Equal Employment Opportunity Hiring Process Policy required that the job description for the New Position be posted within EHC for a minimum of three days and that qualified applicants from within EHC be afforded an opportunity to apply for and be reasonably considered for the New Position.

**43.**

Had EHC posted the New Position within EHC as required by EHC's Equal Employment Opportunity Hiring Process Policy, Plaintiff would have applied for the position.

**44.**

EHC's promotion of the less-experienced employee into the New Position without first posting the New Position within EHC and offering Plaintiff and other

qualified persons within EHC the opportunity to apply disregarded EHC's Equal Employment Opportunity Hiring Process Policy.

**45.**

Mr. Hatcher made race-based derogatory remarks in Plaintiff's presence on multiple occasions.  Beginning in 2019, Plaintiff shared Mr. Hatcher's race-based derogatory remarks with multiple human resources professionals within EHC.

**46.**

One of Plaintiff's subordinates reported to her that Mr. Hatcher had made race-based derogatory remarks in that employee's presence.  Beginning in 2020, Plaintiff reported to multiple human resources professionals within EHC Mr. Hatcher's race-based derogatory remarks that had been reported to her by a subordinate.

**47.**

After reporting Mr. Hatcher's race-based derogatory remarks to EHC, in 2020 Plaintiff participated in an investigation by EHC of allegations of race discrimination in EHC's Physician Group Practice Patient Financial Services department.  During that investigation, Plaintiff reminded EHC of her previous reports of Mr. Hatcher's race-based remarks in the presence of herself and her subordinate. EHC took

insufficient corrective action against Mr. Hatcher in response to Plaintiff's report and Plaintiff's participation in that investigation.  In contrast to EHC's failure to sufficiently discipline Mr. Hatcher, one or more of Mr. Hatcher's direct reports were disciplined and terminated in connection with that investigation.

**48.**

Some of the actions and restrictions by Jimmy Hatcher that were directed towards Plaintiff occurred after Plaintiff reported Mr. Hatcher's race-based derogatory remarks to EHC and participated in the investigation thereof.

**COUNT I TITLE VII DISCRIMINATION ON THE BASIS OF SEX**

**49.**

Plaintiff incorporates herein by reference the allegations set forth in Paragraphs 1-48 of this Complaint.

**50.**

EHC, through Jimmy Hatcher, engaged in discriminatory actions and restrictions towards Plaintiff.

**51.**

EHC's and Jimmy Hatcher's actions and restrictions directed towards Plaintiff were based on Plaintiff's sex.

**52.**

EHC failed to take effective corrective action against Jimmy Hatcher, and otherwise failed to protect Plaintiff from discrimination on the basis of her gender, even after Plaintiff made multiple reports of sex discrimination to multiple individuals within EHC who had responsibility for overseeing and responding to human resources matters.

**53.**

Plaintiff has been harmed by EHC's discrimination and is entitled to an award of compensatory damages in an amount to be established at trial.

**54.**

Because EHC failed to take corrective action against Jimmy Hatcher and the situation became untenable, Plaintiff's only option to escape the discrimination was to retire from EHC ten years sooner than she had expected to retire.

**55.**

Plaintiff's lifetime earnings have been reduced as a consequence of Plaintiff being constructively forced to retire from EHC ten years sooner than planned. Plaintiff is entitled to an award of damages equal to the amount of her resulting lifetime earnings loss.

**56.**

EHC's conduct was willful or with conscious indifference to the consequences, and for this reason EHC's actions support an award of punitive damages pursuant to Title VII.

**57.**

Plaintiff is entitled to an award of attorney's fees and litigation expenses associated with this Count under Title VII.

**WHEREFORE**, Plaintiff Brooke Moore prays for Judgment against EHC under Count I as follows:

a.  Compensatory damages in an amount to be determined at trial;

b.  Front pay and back pay in an amount to be determined at trial;

c.  Attorney's fees and litigation expenses pursuant to Title VII;

d.  Punitive damages pursuant to Title VII; and

**e.**  Such other and further relief as the Court deems appropriate.

## COUNT II

## HOSTILE WORKPLACE SEXUAL HARASSMENT

### 58.

Plaintiff incorporates herein by reference the allegations set forth in Paragraphs 1-48 of this Complaint.

### 59.

EHC's and Jimmy Hatcher's actions and restrictions directed towards Plaintiff created a hostile work environment for Plaintiff based on Plaintiff's sex.

### 60.

EHC failed to take effective corrective action against Jimmy Hatcher, and otherwise failed to protect Plaintiff from a hostile work environment, even after Plaintiff made multiple reports that she was being subjected to a hostile work environment to multiple individuals within EHC who had responsibility for overseeing and responding to human resources matters.

### 61.

Plaintiff has been harmed by EHC's hostile work environment and is entitled to an award of compensatory damages in an amount to be established at trial.

**62.**

Because EHC failed to take corrective action against Jimmy Hatcher and the situation became untenable, Plaintiff's only option to escape the hostile work environment was to retire from EHC ten years sooner than she had expected to retire.

**63.**

Plaintiff's lifetime earnings have been reduced as a consequence of Plaintiff being constructively forced to retire from EHC ten years sooner than planned. Plaintiff is entitled to an award of damages equal to the amount of her resulting lifetime earnings loss.

**64.**

EHC's conduct was willful or with conscious indifference to the consequences, and for this reason EHC's actions support an award of punitive damages pursuant to Title VII.

**65.**

Plaintiff is entitled to an award of attorney's fees and litigation expenses associated with this Count under Title VII.

**WHEREFORE**, Plaintiff Brooke Moore prays for Judgment against EHC under Count II as follows:

a.      Compensatory damages in an amount to be determined at trial;

b.      Front pay and back pay in an amount to be determined at trial;

c.      Attorney's fees and litigation expenses pursuant to Title VII;

d.      Punitive damages pursuant to Title VII; and

e.      Such other and further relief as the Court deems appropriate.

## COUNT III

## RETALIATION IN VIOLATION OF TITLE VII (SEX)

### 66.

Plaintiff incorporates herein by reference the allegations set forth in Paragraphs 1-48 of this Complaint.

### 67.

Plaintiff has exercised her federally protected rights by asserting a claim of discrimination on the basis of sex against EHC pursuant to Title VII.

### 68.

Plaintiff has exercised her federally protected rights by asserting a claim of hostile work environment on the basis of sex against EHC pursuant to Title VII.

**69.**

In response to Plaintiff's assertion of her federally protected rights, EHC retaliated by excluding Plaintiff from conversations and decision making that were normal parts of her job responsibilities, thereby interfering with Plaintiff's ability to perform her job.

**70.**

In response to Plaintiff's assertion of her federally protected rights, EHC retaliated by removing some of Plaintiff's job responsibilities without replacing those removed responsibilities with other responsibilities, thereby reducing Plaintiff's professional standing among her colleagues, superiors, and subordinates.

**71.**

In response to Plaintiff's assertion of her federally protected rights, EHC retaliated by promoting a less-experienced colleague into the New Position without first posting the New Position or otherwise offering Plaintiff the opportunity to apply for and be fairly considered for the New Position.

**72.**

In response to Plaintiff's assertion of her federally protected rights, EHC retaliated by permitting Jimmy Hatcher to continue to interfere with Plaintiff's terms

and conditions of employment to the point that Plaintiff was constructively forced to retire from EHC ten years sooner than Plaintiff had planned to retire. Plaintiff's early retirement reduced her projected lifetime earnings.

**73.**

Plaintiff has incurred financial losses as a result of EHC's retaliation.

**74.**

Plaintiff is entitled to injunctive relief barring EHC from future retaliation.

**75.**

Plaintiff is entitled to an award of compensatory damages, including but not limited to front pay and back pay associated with EHC's retaliation, in an amount to be proven at trial.

**76.**

EHC's conduct was willful or with conscious indifference to the consequences, and for this reason EHC's actions support an award of punitive damages.

**77.**

Plaintiff is entitled to an award of attorney's fees and litigation expenses associated with this Count.

**WHEREFORE**, Plaintiff Brooke Moore prays for Judgment against EHC under Count III as follows:

a.  Injunctive relief barring future retaliation by EHC;

b.  Compensatory damages in an amount to be determined at trial;

c.  Attorney's fees and litigation expenses;

d.  Punitive damages; and

e.  Such other and further relief as the Court deems appropriate.

## COUNT IV

## RETALIATION IN VIOLATION OF TITLE VII (RACE)

### 78.

Plaintiff incorporates herein by reference the allegations set forth in Paragraphs 1-48 of this Complaint.

### 79.

Plaintiff has exercised her federally protected rights pursuant to Title VII by sharing Jimmy Hatcher's race-based derogatory remarks with human resources professionals within EHC.

**80.**

Plaintiff has exercised her federally protected rights pursuant to Title VII by participating in an investigation by EHC of allegations of race discrimination in EHC's Physician Group Practice Patient Financial Services department.

**81.**

In response to Plaintiff's assertion of her federally protected rights, EHC retaliated by permitting Jimmy Hatcher to continue to interfere with Plaintiff's terms and conditions of employment to the point that Plaintiff was constructively forced to retire from EHC ten years sooner than Plaintiff had planned to retire.  Plaintiff's early retirement reduced her projected lifetime earnings.

**82.**

Plaintiff has incurred financial losses as a result of EHC's retaliation.

**83.**

Plaintiff is entitled to injunctive relief barring EHC from future retaliation.

**84.**

Plaintiff is entitled to an award of compensatory damages, including but not limited to front pay and back pay associated with EHC's retaliation, in an amount to be proven at trial.

**85.**

EHC's conduct was willful or with conscious indifference to the consequences, and for this reason EHC's actions support an award of punitive damages.

**86.**

Plaintiff is entitled to an award of attorney's fees and litigation expenses associated with this Count.

**WHEREFORE**, Plaintiff Brooke Moore prays for Judgment against EHC under Count IV as follows:

a.    Injunctive relief barring future retaliation by EHC;

b.    Compensatory damages in an amount to be determined at trial;

c.    Attorney's fees and litigation expenses;

d.    Punitive damages; and

e.    Such other and further relief as the Court deems appropriate.

## COUNT V

## STATE LAW BREACH OF CONTRACT

**87.**

Plaintiff incorporates herein by reference the allegations set forth in Paragraphs 1-48 of this Complaint.

**88.**

Pursuant to EHC's Equal Employment Opportunity Hiring Process Policy ("Policy"), in connection with the creation of the New Position, a job description should have been prepared and the position and job description should have been posted within EHC for a minimum of three days so that qualified applicants such as Plaintiff would have had the opportunity to apply for and be fairly considered for the New Position.

**89.**

The Policy established a contractual right in favor of Plaintiff and all other qualified individuals to be timely notified about the New Position; to be informed of the job description and qualifications for the New Position; and to have the opportunity to apply for and be fairly considered for the New Position.

**90.**

EHC breached the Policy by failing to timely notify Plaintiff about the New Position; by failing to inform Plaintiff of the job description and qualifications for the New Position; and by failing to afford Plaintiff the opportunity to apply for and be fairly considered for the New Position.

**91.**

Plaintiff suffered damages as a result of EHC's breach of the Policy, because promotion of Plaintiff into the New Position would have resulted in an increase in Plaintiff's compensation as well as a gain in status within EHC.

**92.**

Plaintiff is entitled to an award of compensatory damages equal to the compensation differential between the position from which she retired at EHC and the New Position, together with pre-judgment interest at the legal rate.

**93.**

EHC's conduct constitutes bad faith and stubborn litigiousness, and has caused Plaintiff unnecessary trouble and expense.  Plaintiff has incurred expenses in connection with her efforts to enforce her rights, and accordingly, she is entitled to recover from EHC all costs of litigation associated with this Count of the Complaint, including reasonable attorney's fees, pursuant to O.C.G.A. §13-6-11.

**WHEREFORE**, Plaintiff Brooke Moore prays for Judgment against EHC under Count V as follows:

    a.  Compensatory damages in an amount to be determined at trial;

    b.  Pre-judgment interest at the legal rate;

c.  Attorney's fees and litigation expenses as to this Count; and

d.  Such other and further relief as the Court deems appropriate.

**PLAINTIFF BROOKE MOORE PRAYS FOR TRIAL BY A TWELVE-**

**PERSON JURY.**

Respectfully submitted,

**THE MYER LAW FIRM**
Attorney for Plaintiff Brooke Moore
*/s/ Mari L. Myer*
MARI L. MYER
Georgia Bar No. 533020

125 East Trinity Place, Suite 308
Decatur, Georgia  30030
404-601-4125
mmyer@myerlawatlanta.com